Nora Christine CURTIS, a minor, by her mother, Mrs. Howard TEDDER, and Mrs. Howard Tedder, Individually, Plaintiffs-Appellees,

v.

James A. VAN DUSEN, American Electrical Contractors, Julie Harris and Randy Roberts, Defendants-Appellants.

Julie HARRIS, a minor, by her mother, Linda ROSS and Linda Ross, Individually, Cross-Plaintiffs,

v.

James A. VAN DUSEN and American Electrical Contractors, Cross-Defendants.

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 22, 1986.

Permission to Appeal Denied by Supreme Court Jan. 20, 1987.

Hayden Lait and Diane E. Bell, Byrd, Cobb, Norwood, Lait, Dix, and Babaoglu, Memphis, for plaintiffs-appellees.

Alice L. Gallaher, Causey & Wages, Memphis, for defendant/cross-plaintiff/appellant Julie A. Harris and cross-plaintiff/appellant Linda Ross.

Robert L. Dobbs, Memphis, for defendant-appellant.

HIGHERS, Judge.

This case arises out of a two vehicle highway collision that occurred in Southaven, Mississippi. Trial was held in Memphis, Tennessee. The trial court applied the substantive law of Mississippi and the

procedural law of Tennessee. All parties to the suit appeal the jury's verdict, alleging numerous trial court and jury errors in assessing liability and damages.

At the time of the accident on October 26, 1979, Christine Curtis, a minor, was riding as a guest passenger in a car driven by Julie Harris, also a minor, when the car collided head-on with a vehicle driven by James Van Dusen. Curtis suffered severe injuries in the accident, and her mother, Mrs. Tedder, filed suit in Tennessee Circuit Court against Van Dusen, his employer, Harris, and the owner of the car driven by Harris. Harris, by her mother, Linda Ross, filed a cross-complaint against Van Dusen and the employer for injuries suffered by Harris and for damages allegedly incurred by Ross arising out of her daughter's injuries. The employer and the owner of the car eventually were dropped from the lawsuit and were not parties at trial.

A major issue of liability at trial concerned the relative positions of the vehicles upon impact. Mississippi law incorporates comparative negligence doctrine, and the jury was faced with determining the relative degrees of fault attributable to each driver. The jury returned verdicts awarding Curtis $150,000 against both Van Dusen and Harris; awarding her mother, Tedder, $10,000 against both Van Dusen and Harris; and awarding verdicts on the cross-action by Harris and her mother Ross against Van Dusen in the amounts of $12,-500 for Harris and $5,000 for Ross. Harris and Ross contend on appeal that the verdict was inadequate as to them, and should not have been approved by the trial court. They also contend that no material evidence supported the verdict, and that they should have been granted a new trial. Van Dusen also requested unsuccessfully that the jury verdict be set aside and a new trial ordered, contending that the evidence did not show any negligence on his part. Van Dusen further contends that the jury failed to follow its instructions and miscalculated damages. Additionally, Van Dusen alleges trial court error in excluding as hearsay a statement made by Harris to a medical attendant who treated her after the accident, who asked whether she had been drinking; in admitting testimony as to whether the scene of the accident was known as a "high accident location;" and in allowing non-expert witness to testify as to the reasonableness of medical expenses. Harris and Ross allege trial court error in allowing Van Dusen to introduce into evidence the testimony of an eyewitness who was not disclosed pursuant to pretrial discovery; in allowing Van Dusen to introduce into evidence photographs showing a line in the road in question; in refusing to give a jury instruction stating that if the jury determined a witness had lied once, all of that witness' testimony could be disregarded; and in reading to the jury portions of the pleadings without introducing into evidence other portions of the pleadings.

We will first consider the issue relating to the exclusion of evidence. Van Dusen asserts that the trial court erroneously excluded as hearsay a question by an unknown treating medical attendant as to whether Harris had been drinking on the night of the accident, and the affirmative response by Harris. The medical attendant who asked the question did not testify at trial, and thus was not available for cross-examination. The testimony was offered after it arose from the deposition of an ambulance attendant who testified as follows:

Q. What conversation took place with respect to the driver that you overheard?

A. She was asked the standard medical questions; you know, where she hurt. She was examined. Her eyes were examined for neurological problems. He asked her where she had been or asked her if she'd been to the ballgame.

Q. Did she respond to these questions?

A. She responded to the ballgame question. She replied yes.

Q. Did she respond to other questions he asked her while you were listening?

A. Yes.

Q. Did he continue to ask her other questions?

A. Yes.

Q. Then, tell me what else he asked her.

\* \* \* \* \* \*

A. He asked her if she had been drinking.

Q. "She" who?

A. Julie Harris.

Q. And what was her response?

A. She did not respond to him.

Q. Then what else happened?

A. He asked her again if she had been drinking.

Q. What was her response?

A. "Yes."

The trial court held that the testimony regarding whether Harris had been drinking was hearsay and therefore inadmissible. Van Dusen contended the testimony constituted an admission against interest and was thereby an exception to the hearsay rule.

The expression "admission against interest" confuses two separate exceptions to the hearsay rule: admission by a party-opponent and declaration against interest. The two are not identical since an admission may be admissible only from a party whereas a declaration against interest may be admissible from a non-party provided in each case that the prerequisites of the exception are met. McCormick on Evidence, 3rd ed., § 262, sets forth the following:

Admissions are the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him ...

A type of evidence with which admissions may be confused is evidence of declarations against interest. The latter, coming in under a separate exception to the hearsay rule, to be admissible must have been against the declarant's interest when made. No such requirement applies to admissions ... Hence, the common phrase in judicial opinions, "admissions against interest," is an invitation to confuse two separate exceptions to the hearsay rule and to engraft upon admissions an against-interest requirement without basis in reason or authority.

To be precise, therefore, we are dealing in this instance with the question of admissibility of an admission by a party-opponent. Binder in Hearsay Handbook, 2nd ed., states:

No assertion of a party, if offered in evidence by a party-opponent, may be excluded as hearsay. It may be excluded on the ground that it is irrelevant, or privileged, or for many other reasons, but never because it is hearsay. It is always excepted to the hearsay rule as an admission of a party-opponent.

The Federal Rules of Evidence simply provides that the admission of a party-opponent is not hearsay. See Rule 801(d)(2).

■ We can perceive of no reason in light of these principles why the excluded testimony in this case should not have been admitted. The acknowledgment by Julie Harris, driver of one of the vehicles, that she had been drinking certainly qualifies as an admission by a party-opponent. It is unrealistic to argue that the question itself was hearsay and that only her answer, standing alone, would be admissible, if at all. When asked whether she had been drinking, Harris adopted the language of the question and answered, "Yes," which was tantamount to stating, "Yes, I had been drinking." On cross-examination during the trial she was asked if she had been drinking on the night of the accident, and she answered, "No." Counsel for Van Dusen was deprived of the opportunity to impeach her testimony by the prior inconsistent statement. Further, the argument that the error was harmless is unpersuasive. The jury found Van Dusen only 5% responsible and found Harris 95% responsible for the accident. The percentage of responsibility might well have been increased for Harris and decreased for Van Dusen in view of the proffered testimony. We find that the error more probably than not affected the judgment. T.R.A.P. 36(b).

We therefore reverse the judgment and remand for a new trial.

Although we reverse and remand, we will nevertheless address those issues that may affect the retrial of this case.

■ We begin with the "known falsehood" charge that the trial court refused to give. Harris and Ross wanted the court to charge the jury as follows:

Ladies and gentlemen of the jury, the court charges you that if you find a party or witness has testified to a known falsehood, then you, in your discretion, may apply the maxim 'false in one, false in all' and you may disregard all of the testimony of that party or witness.

The charge was requested because Van Dusen had denied on cross-examination conferring with his attorneys about a map, during a court recess. Later, a bailiff testified on direct examination that Van Dusen *had* conferred with his attorneys during the recess.

A similar instruction was requested and denied in *McKinnon v. Michaud*, 37 Tenn. App. 148, 260 S.W.2d 721 (1953). The appellate court noted that the falsehood must be deliberate and willful rather than a product of mistake before such an instruction would be proper. In any event, as we read the instruction, it tells the jury nothing more or less than that they, in their discretion, may choose to believe or disbelieve a witness entirely if they find he lied once. We believe the jury was capable of making such a decision without the aid of this instruction, since a major function of the jury is to assess the credibility of particular witnesses based upon their testimony.

We observe that the trial court charged the jury in part as follows:

Now, you ladies and gentlemen of the jury are the judges of the facts concerning the controversies in these lawsuits, and ... are called upon to weigh the testimony of every witness ... giving to the testimony of the witnesses the weight, faith, credit and value to which you think it is entitled. You will note the manner and demeanor of witnesses while on the stand; whether the witness impresses you as a witness who is telling a falsehood; whether the witness is a frank witness or one who is not frank in his or her expressions in answering questions.

The trial court committed no error in refusing to give the requested jury instruction.

■ Harris and Ross also assign trial court error in allowing a witness to testify who had not been identified as an eyewitness in response to a pre-trial deposition. Richard Bell testified for Van Dusen that he saw the vehicles swerving upon impact while looking in the rear view mirror of his automobile. Bell was the only eyewitness other than the parties. Van Dusen had been asked by deposition whether he knew of any eyewitnesses who actually saw the accident other than the people in the two vehicles, and he answered in the negative. The court examined Van Dusen out of the presence of the jury to determine whether he had known that Bell was an eyewitness previously, and determined Van Dusen knew only that Bell had seen the vehicles after the accident, but not that he had seen the accident itself.

The issue of undisclosed witnesses was addressed at some length in *Strickland v. Strickland*, 618 S.W.2d 496 (Tenn.App. 1981). In that case, the court held that a party who "willfully, knowingly, and intentionally withheld the name of a person with knowledge of discoverable matter" should be sanctioned by barring the testimony of the undisclosed witness. However, the court also noted that the trial court was vested with wide discretion in such matters.

The fact that the court can impose the sanction of not permitting the unnamed witness to testify, does not mean that it must do so. Generally, where a party has not given the name of a person with knowledge of discoverable matter, the court should consider the explanation given for the failure to name the witness, the need for time to prepare to meet the

testimony, and the possibility of a continuance. In light of these considerations the court may permit the witness to testify, or it may exclude the testimony, or it may grant a continuance so that the other side may take the deposition of the witness or otherwise prepare to meet the testimony.

618 S.W.2d at 501.

We hold that the trial court did not abuse its discretion in proceeding with an inquiry of the explanation for nondisclosure, then allowing the witness to testify. Further, inasmuch as the identity of the witness will be known to all parties prior to the new trial, the elements of surprise and non-discovery will be eliminated.

Harris and Ross further allege trial court error in allowing the defendant Van Dusen to introduce into evidence photographs showing a line in the road in question. The parties had stipulated through counsel that all pictures of the accident scene would be shared, and no other pictures showed a line in the middle of the road. The record reflects that the trial court carefully considered whether breach of the discovery agreement was deliberate, and concluded that it was not.

> Decisions with regard to discovery matters are in the sound discretion of the trial court, and so appellate courts are reluctant to reverse a trial court's decision unless a clear abuse of discretion is demonstrated.

*Price v. Mercury Supply Co.*, 682 S.W.2d 924 (Tenn.App.1984). We find no clear abuse of discretion in the procedure followed by the trial court.

■ Cross-plaintiffs Harris and Ross next allege that the trial court erred in reading to the jury portions of the pleadings which were not introduced into evidence, and allege that the jury was confused as a result. In *Glover v. Burke*, 23 Tenn.App. 350, 133 S.W.2d 611 (1938), the court noted that it normally was error for the trial judge to read long, prolix, intricate, and repetitious pleadings to the jury. However, the *Glover* court found no prejudice to the defendant where the court also explained the pleadings in plain and simple language. On retrial the trial court should omit references to those portions of the pleadings on which the parties have not relied, on which no proof has been presented, and on which no issue has been made out.

It follows that the judgment of the trial court is reversed and this matter is remanded for a new trial consistent with the principles set out herein. Costs of appeal are adjudged against the appellees.

CRAWFORD and FARMER, JJ., concur.